C8-1683-TSH

## AFFIDAVIT OF ROBERT J. WHITE

I, Robert J. White, being duly sworn, hereby do state that:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been so employed for approximately six years. Previously, I served for four years as a United States Border Patrol Agent with the Immigration and Naturalization Service ("INS") in Laredo, Texas.

2. I am currently assigned to Boston Group IV, which investigates federal criminal violations, including, but not limited to, federal firearms and narcotics violations in the eastern portion of Massachusetts. In my duties and employment with ATF and INS, I have received training in state and federal firearms laws, state and federal controlled substances laws, firearms trafficking, search and seizure, asset forfeiture, money laundering, interdiction of narcotics and/or illegal proceeds, and narcotics investigation.

3. As a Special Agent, my duties include the investigation of various firearms offenses, including illegal possession, sale and trafficking of firearms. As a result of my participation in firearms investigations and the training that I have received as an ATF Special Agent, I am familiar with federal firearms laws and know that it is a violation of 26 U.S.C. § 5861(d), (e) & (i) to possess and transfer an unregistered firearm and which lacks a serial number.

4. This affidavit is made in support of a criminal complaint charging GERARDO ROSARIO, d.o.b. 9/22/65, with a violation of 26 U.S.C. § 5861(d),(e) & (i), transfer and

possession of a firearm which is not registered and which lacks a serial number.

5. The facts stated herein are based upon on my personal involvement in this investigation, my training and experience, information provided to me by other law enforcement officers, and information provided to me by a confidential and reliable informant ("CI-1"). In submitting this affidavit, however, I have not included each and every fact known to me about the investigation, but only those facts which I believe are necessary to establish the requisite probable cause.

6. In June of 2006, I was contacted by a confidential informant ("CI-1") who was known to me. Although his cooperation in this investigation led to his first undercover buy of a firearm, this informant has provided accurate, truthful, and reliable information to me in a number of subsequent investigations. Several of these investigations have resulted in individuals pleading guilty to criminal conduct. The investigations have involved illegal possession or sale of firearms.

7. More specifically, CI-1 has participated in at least seven separate investigations and CI-1's information has proven reliable and s/he has successfully purchased guns from other convicted felons. One such was Domenique William, whose investigation began October 16, 2006. He pleaded guilty and was sentenced on September 20, 2007. In another case, on October 31, 2006, a search warrant was executed in another investigation based on information provided by CI-1; a firearm and crack cocaine were recovered in that search.

8. CI-1 informed me in June of 2006 that a person known to him/her as "Giz" had told CI-1 that he could sell CI-1 firearms. CI-1 believed Rosario's true first name is Gerry. Giz has subsequently been identified by law enforcement personnel familiar with him as GERARDO ROSARIO based on the nickname, the vehicle he was using, his physical description and by direct observation of Rosario when he met with CI-1. From conversations between CI-1 and this person, CI-1 knows that Rosario is also involved in cocaine trafficking.

9. CI-1 provided a telephone number for Rosario, of 508 408-3074. CI-1 reported that Rosario had arrived at a meeting with CI-1 driving a silver Honda Accord. Rosario offered to make CI-1 a false Massachusetts driver's license for a fee of $150.00. CI-1 agreed and Rosario took a picture of CI-1 to be used in the false license.

10. On June 28, 2006, CI-1 met with Rosario in Brockton, MA. He picked up CI-1 in the same silver Honda Accord. Rosario showed CI-1 the partially completed driver's license he was preparing for CI-1. The license had a picture of CI-1, but the name was "Jason Durst." Rosario took out a small electronic device that captures signatures and had CI-1 sign in the name of Jason Durst on the device for use in completing the false license.

11. During this same meeting, Rosario showed CI-1 a sawed-off shotgun that was in the trunk of the Honda and offered it to CI-1 for $150.00. CI-1 said he wanted to buy the shotgun but needed more time to obtain the money.

12. I met with CI-1 that day along with Brockton Detective Nazire Paul. We supervised a telephone call between CI-1 and

Rosario, which was recorded. CI-1 spoke with Rosario about purchasing the shotgun. Rosario said he would bring it to CI-1, who said the meeting would have to be the next day. A meeting was set up for approximately 1:30 p.m. or 2:00 p.m. the next day and Rosario said he would bring the "other thing" which CI-1 understood to be the false driver's license.

13. On June 29, 2006, CI-1 spoke with Rosario at approximately 1:45 p.m. The recording of this call is only partially audible due to equipment malfunction. A meeting was set up for twenty minutes later.

14. Prior to his arrival, federal agents and local police established surveillance in the area of a particular address in Brockton, MA ("the location"). CI-1 was also searched to make sure there was no contraband on CI-1. CI-1 was equipped with a monitoring device and a digital audio and video recorder was placed on CI-1's person. CI-1 was driven an area near to 25 Clarence Street; s/he walked to the driveway at the location and called Rosario to say that CI-1 was waiting for Rosario to arrive.

15. At approximately 2:26 p.m. on that same day, June 29, 2006, a silver Honda Civic with Massachusetts registration 44JS17 arrived at the location. A law enforcement officer, Detective Brian Safioleas, identified Rosario as the driver based on experience with Rosario. A conversation between CI-1 and Rosario then occurred and was monitored by me. Rosario showed CI-1 the shotgun, a Noble model 40, which had been wrapped in a blanket and a small towel. It had the barrel and stock sawed off. CI-1 gave Rosario $150.00 for the shotgun. Rosario told CI-1 that he would have the fake driver's license for him the following day and then left.

16. I have examined the Noble model 40 sold by Rosario to CI-1 on June 29, 2006 and determined that it is a firearm which lacks a serial number and that it is a sawed off shotgun which is subject to the registration and serial number requirements of federal firearms law.

17. Based on the above, I believe that probable cause exists to conclude that on or about June 29, 2006, in Brockton, Massachusetts, within the District of Massachusetts, GERARDO ROSARIO did knowingly possess and transfer a Noble shotgun, model 40, which was neither registered nor marked with a serial number, in violation of Title 26, United States Code, Section 5861 (d), (e) & (i).

_____
Robert J. White
Special Agent
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Subscribed and sworn to before me on this 30th day of April, 2008.

_____
Timothy Hillman
United States Magistrate Judge